O. G. WILLIAMS and others v. J. W. WILLIAMS and others.

*Judicial Sale—Trust—Contract—Consideration.*

An administrator having obtained a decree for the sale of his intestate's land, to pay an alleged indebtedness to himself, and purchased the land at the sale procured by him, upon objection made by such of the heirs as were of age, contracted to convey to them, and also the minor heirs, each a moiety of the land equal to his share therein, upon the payment by them respectively of a corresponding portion of the claim against the intestate. The heirs that were of age paid their shares of the debt, and received their titles accordingly: *Held*, that the consideration inducing the promise on the part of the administrator enured to the benefit of the minor heirs, and that, upon coming of age, they were entitled to enforce the contract and call for conveyances of their aliquot portions of the land, upon discharging respectively their proportionate parts of the debt.

CIVIL ACTION tried at Fall Term, 1879, of YADKIN Superior Court, before *Gilmer, J.*

This was an original bill in equity, filed at the spring term, 1866, of Iredell superior court of law and equity by the plaintiffs against the defendants, to vacate a judgment of the county court of Iredell county, to set aside a sale under said judgment, and for an account and settlement of

the administration of the estate of Offa Williams, deceased, by the defendant James W. Williams, as his administator.

Offa Williams died in 1846, and the defendant administered on his estate. The intestate was possessed at the time of his death of a considerable personal estate and of several tracts of land lying in the county of Iredell, consisting of some twelve or thirteen hundred acres and quite valuable. He left surviving him the following children, James W. Williams, (the defendant,) and Elizabeth, wife of Russell Shoemaker, L. W. Williams, Abram L. Williams, Samuel B. Williams, Washington A. Williams, Offa G. Williams, Melvin Williams, and Milton Williams. His widow, Nancy Williams, also survived him. S. B. Williams died intestate before the institution of this suit, and his mother, Nancy Williams, administered on his estate. Leander Williams is dead and John Williams is his administrator, and Abram Williams is also dead leaving the following children and heirs at law, to wit, Melissa, Millard F., Martha, Roxanna, John and Archibald, all infants at the commencement of this action.

Washington A. Williams, O. G. Williams, Melvin Williams, Milton Williams and Nancy Williams, administratrix of S. B. Williams, are the plaintiffs in this action against the other children and grandchildren of the said Offa Williams and John Williams, administrator of Leander Williams.

The plaintiffs in their bill charge that James W. Williams as administrator of their father, Offa Williams, filed a petition in the county court of Iredell county, against all of the heirs at law of his intestate under section 8, chapter 63, of the Revised Statutes, to recover a debt which he alleged in the said petition was due to him from his intestate, amounting to some seven hundred and ten dollars, being money paid by him as surety for his intestate to one Hiram Williams.

At February term, 1849, a decree was rendered against

the defendants for the amount of the plaintiff's alleged debt, to wit, $702.08, and that he have satisfaction for the same out of the lands descended to the defendants. Execution was issued upon this decree and in August, 1850, all the lands descended from the defendant's intestate to his heirs at law, (the plaintiffs and defendants in this suit) were exposed to sale by virtue of said execution for cash and purchased by the defendant James W. Williams, at a price not equal to half their value. The plaintiffs charge that this was "an artful and fraudulent contrivance on the part of said administrator to use the power given him by virtue of his office, as administrator, for his own selfish and wicked gain, and self-aggrandizement, and at the great sacrifice and injury of the interest committed to his charge; and that the proceedings to sell the land were irregular and contrary to the orderly practice of the court; that no land was described in the petition and the plaintiffs were then infants of tender years without guardian, and their interest in said suit was represented by a guardian *ad litem* who acknowledged for them the service of the process; and they charge, that for the more effectual accomplishment of his purpose to defraud the complainants, the said James W. Williams artfully induced and caused Russell Shoemaker and wife and S. B. Williams, who were of age, to acquiesce in his selfish schemes, by conveying to them a portion of said land by deeds in fee-simple, and executing a bond, stipulating to convey to them and the other heirs at law of the intestate all the remainder of the land upon their arrival at full age. The prayer of the bill is for an account and settlement of the administration of the said James W. Williams; that the deeds executed by the sheriff of Iredell to the said J. W. Williams for the lands sold by him under the execution in favor of said Williams against the heirs of Offa Williams, be cancelled, or that he be decreed to convey the said land to the plaintiffs and the other defendants, or be charged with the full value at the time of his pretended pur-

chase and for such other and further relief in the premises as the nature and circumstances of the case may require.

The defendant, James W. Williams, answered the bill, and admitted that his intestate at the time of his death was seized of a large quantity of land consisting of about eleven hundred acres, but the most valuable of it was assigned to the widow for her dower, and that she was then living, being about sixty-five years of age, and that there were some five or six hundred acres almost worthless. That his intestate's estate was largely indebted, and that after exhausting the personal estate in the payment of the debts, he paid out of his own individual funds over one thousand dollars. That of this large sum he had been compelled to pay as surety for his intestate more than seven hundred dollars, and since the sale of the land mentioned in the pleadings, he has been compelled to pay as security for his intestate a debt amounting to some two hundred dollars or upwards, and besides the debts where he was surety, he has paid some one hundred and thirty-three dollars out of his own money. He denied any combination with Shoemaker and others or any conversation with them or any one else in regard to the sale of the land before it was sold, and averred that the proceedings had in the county court to effect the sale were conducted with perfect fairness, and were altogether regular as he was advised. He denied any purpose or attempt at any time to injure his brothers and sisters, and averred that the lands were sold for the full market value. He admitted the plaintiffs were infants of tender years at the time of filing the petition, and in conclusion relied upon the statute of limitations.

The defendant, Shoemaker, in his answer, states that some time after the sale of the land in controversy by the sheriff and the purchase by the defendant, James Williams, he bought a portion of the land from said Williams, but denied that there was any fraud or collusion between him and

Williams to injure the sale of said land, or to injure in any way either of the plaintiffs; that there had not been a word between him and the defendant in regard to the purchase of the land prior to the sale by the sheriff. He stated that he believed the land brought a fair price, that there were some five or six hundred acres of it almost worthless, and that the widow's dower covered nearly all the land fit for cultivation, and she was still living.

At August term, 1870, the cause, by consent, was removed to the county of Yadkin, and at the fall term, 1877, of the superior court for that county, it was referred by the judge presiding to R. C. Puryear and S. T. Speir to state an account of the administration of the defendant James W. Williams on the estate of Offa Williams, so as to show whether the personal estate was sufficient to satisfy the debts of the estate, and to show the amount of the debts if any were not satisfied out of the personal estate. The account was taken by the commissioners and reported. Both parties filed exceptions to the report, and the following issues were submitted to a jury in regard to the fraud alleged to have been practiced by the defendant in procuring a sale of the land in controversy, and the inadequacy of the price paid by the defendant for the same.

First. Did the defendant by fraudulent contrivance, and with intent to defraud the heirs of Offa Williams, procure a judgment to be rendered in his favor and a sale of the land in controversy in order to purchase the same for himself at an under value? Answer. Yes.

Second. What was a fair value of the land in 1850? Answer. $1,800.

Upon this finding of the jury and the report of the commissioners and the ruling of His Honor upon the exceptions filed by both parties, the court adjudged that the sale of the land in dispute by the sheriff of Iredell county be vacated, and the deeds made by him to the defendant, James

W. Williams, be surrendered by said Williams and cancelled, and that he be forever enjoined from setting up the same, or deriving any benefit under them to the prejudice of the heirs at law of the said Offa Williams, &c. The defendants appealed from this judgment.

*Messrs. J. M. Clement* and *W. H. Bailey,* for plaintiffs.
*Messrs. D. M. Furches* and *Reade, Busbee & Busbee,* for defendants.

ASHE, J., after stating the facts. The bill seems to be filed in the alternative with a double aspect, either to have the deeds made by the sheriff of Iredell to the defendant surrendered and cancelled, or to have the defendant declared a trustee for the plaintiffs and decreed to make title to them for a ratable portion of the lands in controversy, according to the stipulations in the bond given by the defendant to S. B. Williams, Russel Shoemaker and wife and L. B. Williams; for the prayer of the bill is that the sheriff's deeds to the said James W. Williams be cancelled, or that he be decreed to reconvey the said land to the plaintiffs and the defendants according to their respective interests therein.

In the view we take of the case, it is immaterial whether the sale of the land and the purchase by the defendant was *bona fide,* or affected by a fraudulent contrivance. If he obtained a title to the land by fraud, as the jury have found that he had done, it would be against equity and good conscience for him to hold the land; and if, on the other hand, there was no fraud, and by his purchase he had acquired a good title, he is bound by his agreement with S. B. Williams, A. L. Williams and Russel Shoemaker and wife, to make title to each of the plaintiffs, W. A. Williams, O. G. Williams, Melvin Williams and Milton Williams, for their several shares in the lands in proportion to the number of

heirs, there being eight of them at the death of O. Williams the intestate.

It is in proof by the testimony of the defendant, Shoemaker, that the defendant, J. W. Williams, proposed that if the heirs of Offa Williams would pay a debt of the estate of three hundred and forty dollars, he would make them a title for the land, and that he, A. L. Williams and S. B. Williams, the only heirs of Offa Williams, who were at the time of lawful age, executed their notes to the said James W. Williams, each for one hundred and thirteen dollars, and he executed a bond to them to make title to them for portions of the land equal to their shares, and to make title to the minor heirs for their shares. The defendant, James W. Williams, in his answer admits he gave such a bond, and in one of his depositions he says he did make a bond conditioned to make title to said land to A. L. Williams, S. B. Williams, and either to Russel Shoemaker or his wife, " I do not recollect which, and to W. A. Williams, O. G. Williams, M. E. Williams, and M. O. Williams, he thought these were the parties to whom title was to be made, when the youngest child became of age."

In another deposition he says that he did agree with A. L. Williams, Russel Shoemaker and wife and S. B. Williams, that if they would pay him about three hundred and thirty-nine dollars, he would convey to them a part of the land, and give to W. A. Williams, O. G. Williams, M. E. Williams and M. O. Williams the balance of the land without any consideration. This agreement was made at the time the bond was given, and that the parties above named executed to him their three several bonds for one hundred and thirteen dollars each, and he says when he lifted the bond he did make deeds to Russel Shoemaker and A. L. Williams for what he considered their share of the land at the time he took up the bond.

There was other evidence in the case tending to show the agreement of the parties.

From all the evidence we think it is established, that the defendant James W. Williams did agree with Russel Shoemaker and wife, A. L. Williams and S. B. Williams, the only heirs of age at the time, that if they would pay him three hundred and thirty-nine dollars, a debt which the estate owed to one Hugh Williams, and for which he was surety, that he would give them his bond to make title to them for certain portions of the land equal to their shares, and make title to the infant heirs of their shares as they severally became of age, and that the said Shoemaker, A. L. and S. B. Williams executed their notes each for the amount he had agreed to pay, and the bond for title was executed according to the agreement. It was one entire transaction, a contract made upon a valuable consideration, and is binding upon the defendant.

The defendant now seeks to avoid that part of the contract stipulating to make title to the minor heirs, by saying, it was without consideration as to them. But it was an entire transaction, a contract made upon a valuable consideration, no matter by which of the parties paid, and the stipulation to make title to the minor heirs was as much a part of the contract as that to make title to the others.

Shoemaker has paid his note and received his deed for the part of the land agreed to be conveyed to him. A. L. Williams also received a deed for his share and resold it to the defendant for $250, in which we must presume his note was settled. The note given by S. B. Williams does not appear to have been paid, nor does it appear that he ever received a deed for his portion.

In the view we have taken of the case, we think it is unnecessary to make any further inquiry in regard to the administration of the personal estate of the intestate, as the reference for an account seems to have been made mainly

with the view of aiding the court in determining upon the question of fraud.

We are of the opinion the defendant must be declared to be a trustee for W. A. Williams, O. G. Williams, M. E. Williams, and M. O. Williams, and that he shall make a deed in fee simple to each of them for one undivided eighth part of all the lands purchased by him at the sheriff's sale under his execution against the heirs of Offa Williams, deceased. And inasmuch as the note of one hundred and thirteen dollars given by S. B. Williams to the defendant James W. Williams has not been paid, and that he is dead and his interest in the land, to-wit, the portion agreed to be conveyed to him by the defendant, has descended to his brothers and sisters and the heirs of A. L. Williams, it is declared that the said debt shall be a charge on the interest so descended, and if upon sale thereof, it shall be sufficient to satisfy said debt with interest thereon, then it shall be a lien on the land herein decreed to be conveyed to the plaintiffs, W. A. Williams, O. G. Williams, M. E. Williams, and M. O. Williams, and it is adjudged the defendant James W. Williams, be taxed with the costs.

The suit is retained for further directions.

PER CURIAM.                     Judgment accordingly.